**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

**5:04-CR-345 (NAM)**

**v.**

**SEAN SOUTHLAND,**

**Defendant.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Glenn T. Suddaby | Thomas A. Capezza |
| United States Attorney | Assistant United States Attorney |
| Northern District of New York | |
| 100 South Clinton Street | |
| Syracuse, New York 13261 | |

Harold R. Short, Petitioner *Pro se*
Jane A. Short, Petitioner *Pro se*
Louis V. Ciardullo, Petitioner *Pro se*

**Norman A. Mordue, Chief Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Sean Southland, a defendant in the above-captioned action, was indicted on June 30, 2004,

on a charge of conspiracy to distribute and possess with intent to distribute cocaine, in violation

of 21 U.S.C. §§ 841, 846.  The indictment also contained a forfeiture count alleging that a 2002

Mercedes Benz C240, in the name of Phoenician Automotive Group, Inc., was subject to

forfeiture pursuant to 21 U.S.C. § 853(c).  On November 29, 2004, Southland pled guilty to the

charge of conspiracy alleged in the indictment and forfeited any interest he had in the Mercedes.

On January 28, 2005, the Court issued a Preliminary Order of Forfeiture regarding the Mercedes as property used to facilitate Southland's narcotics trafficking.

Following Southland's guilty plea and the Preliminary Order of Forfeiture, the government provided direct written notice to Harold Short, Jane Short, and Louis V. Ciardullo, Sr., all of whom filed petitions claiming an interest in the Mercedes. *See* 21 U.S. § 853(n)(2) (a third party may petition for a hearing to adjudicate his or her alleged interest in the property to be forfeited). Presently before the Court is the government's motion to dismiss the petitions pursuant to Fed. R. Crim. P. 32.2(c)(1)(A) for lack of standing. Alternatively, the government seeks dismissal of Ms. Short's and Mr. Short's petitions pursuant to Rule 32.2(c)(1)(B), which permits the filing of a motion for summary judgment following discovery.

## THE PETITIONS

### Louis V. Ciardullo, Sr.

Louis V. Ciardullo, Sr. claims in his petition to have a "claim superior to all other potential claimants for said vehicle." Mr. Ciardullo further avers:

Petitioner first met Sean Southland (Hereinafter 'Southland'), the Defendant in the criminal proceeding, in connection with one Canadian national named Charles McLaughlin (Hereinafter 'McLaughlin'). This occurred on or before 1 November 2002. Petitioner is asserting, in unrelated proceedings, that McLaughlin defrauded him of substantial sums. In an effort to recover a vehicle taken to Canada by McLaughlin, Petitioner hired Southland to assist him. The vehicle was recovered and Southland was retained to assist with other matters, e.g., dealing with fraudulent credit card charges by McLaughlin, etc. As that work was winding down, Southland approached petitioner about helping him to start a used car business. After Petitioner decided to help, it was determined that the most tax effective way for Petitioner to be involved was to fund the start up business through Petitioner's retirement accounts. Southland incorporated a company known as Phoenician Automotive Group, Inc. which then sold bonds to Petitioner's IRA. The custodian of Petitioner's IRA was Morgan Stanley. Morgan Stanley would not agree to hold these assets, so a new account was created with the Onaga Trust Company of Onaga, Kansas acting as the custodian of the account. Petitioner transferred $100,000 to Onaga Trust Company

2

who then purchased the bonds from Phoenician Automotive Group, Inc. Subsequently, Southland convinced Petitioner to fund a companion venture to sell custom brake systems. The new entity was known as Performance Brake Systems, Inc. and it also sold $100,000 worth of bonds to Onaga Trust Company as custodian for the IRA of Petitioner. Southland personally guaranteed the obligations of Performance Brake Systems, Inc.

No payments were ever made by Southland or any of his entities on the bonds. After learning of Southland's arrest, Petitioner retained counsel in Phoenix, Arizona and attempted a prejudgment attachment of any assets in the name of Southland, Phoenician Automotive Group, Inc. and Performance Brake Systems, Inc. No assets were recovered through this proceeding.

Although Petitioner has no proof, it appears that Southland used the proceeds from the sale of his corporate bonds to finance his criminal activities and not for any legitimate corporate ends. The writ of garnishment served by Petitioner on Bank of America in Phoenix was returned unsatisfied. In fact, the only asset that can be linked to the investment made by Petitioner is the subject vehicle.

While there are doubtless many other persons who have been harmed by Southland's actions, Petitioner asserts that only he can provide a direct link to the vehicle, given that it is titled in the name of Phoenician Automotive Group, Inc. and that is one of the entities that has defaulted on its bonds.

Dkt. No. 32.

### Jane Short and Harold Short

In her petition, Ms. Short states that Phoenician Automotive Group, Inc., of which she is owner and president, her husband - Harold Short, and her son – Sean Southland, purchased the Mercedes on April 13 or 14, 2004. Ms. Short states that they purchased the vehicle for $21,000, with funds from the working capital of Phoenician Automotive, and that the vehicle is registered in Mr. Short's name. Attached to Ms. Short's petition is a copy of the cashier's check used to purchase the vehicle, which is drawn on the funds of Phoenician Automotive, and a copy of an Arizona Certificate of Title issued to Mr. Short on July 9, 2004.

In his petition, Mr. Short avers in pertinent part:

3

This is the full story on this fore mentioned vehicle.  First Phoenician Automotive Group, Inc. is, and always was a company owned by my wife, Jane A. Short.  The purpose of this company was, and still is, is to buy vehicles from EBay for wholesale or below and sell them for retail.

In the first week of April, 2004 a Mr. Kevin Lauri had the fore mentioned vehicle for sale on EBay.  My son, Sean Southland contacted Mr. Lauri via email and worked out the price and details to buy this vehicle.  Mr. Lauri stated he could not be present at the sale but we could purchase the car at his parents' home just outside New York city.

On April 13th or 14th my son, Sean Southland and I flew to New York city and took a cab to Mr. Lauri's parents' home and purchased the fore mentioned vehicle.  It was purchased with a cashier's check . . . in the amount of $21,000.00 . . . .  The money for this cashier's check was from Phoenician Automotive Group, Inc.  The next day I flew back to Phoenix and my son, Sean Southland drove the car back to Phoenix.

When he arrived back in Phoenix with the vehicle and my wife, Jane Short saw it we decided to keep it as our personal vehicle, which we did.  A day after the vehicle was brought back, Sean Southland asked if he could use the car to go to the airport.  I told him he could and told him since the car was not registered here to take the paper work and the title with him.  He took it to the Phoenix Airport and left it in short term parking.  And that was the last time he drove the vehicle.

I do not have the address for Mr. Lauri as this was on the paper work and title that was in my sons' briefcase, which the U.S. Customs agents have refused to send to me. I purchased a bond and titled this vehicle in my name . . . in the state of Arizona . . . .

I do not even understand why this vehicle was seized in the first place.  Sean Southland never had any interest in this vehicle, nor any ownership in this vehicle.

Docket No. 35.

## DISCUSSION

### Motion to Dismiss – Rule 32.2(c)(1)(A)

Rule 32.2(c)(1)(A) provides, "In the ancillary proceeding, the court may, on motion,

dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason.

For purposes of the motion, the facts set forth in the petition are assumed to be true."  "Thus,

under Rule 32.2, a motion to dismiss a third-party petition in a forfeiture proceeding prior to

discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal

Rule of Civil Procedure 12(b)." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

Although the government contends that the Court may dismiss the petitions without a hearing if

the petitioners are unable to establish a *prima facie* case, the Second Circuit has held that a

petitioner is not required to make such a showing in order to "defeat the government's motion to

dismiss." *Pacheco*, 393 F.3d at 352. Indeed, the Court must assume that the allegations in the

petitions are true when considering the government's motion, Rule 32.2(c)(1)(A), and grant the

government's motion "'only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations,'" *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506, 514

(2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69 (1984)).[1]

The forfeiture statute requires that the petition be signed by the prospective petitioner

"under penalty of perjury" and "set forth the nature and extent of petitioner's right, title, or

interest . . ." as well as ". . . the time and circumstances of the petitioner's acquisition of the right,

title, or interest in the property, [and] any additional facts supporting the petitioner's claim and

the relief sought." 21 U.S. C. § 853(n)(3). Further, to obtain relief under the forfeiture statute,

petitioners:

> must either (a) have an interest in the property that is superior to the criminal
> defendant's because it arose prior to "the time of the commission of the acts [that]
> gave rise to the forfeiture," 21 U.S.C. § 853(n)(6)(A), or (b) be a "bona fide purchaser
> for value" of the property who was "reasonably without cause to believe that the
> property was subject to forfeiture" at the time of purchase, *id*. § 853(n)(6)(B).

---

[1] For the above reasons, although both parties submitted a number of documents in
support of and in opposition to the instant motion, the Court confines its review to the
petitions and those documents attached to the petitions.

*Pacheco*, 393 F.3d at 353.  In view of the *pro se* status of the petitioners in this case, the Court must construe the petitions liberally.  *See Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005) (*pro se* pleadings to be construed liberally).

### Standing

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *In re Gucci*, 126 F.3d 380, 387-88 (2d Cir. 1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), *cert. denied*, 520 U.S. 1196 (1997).  Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" or "Controversies", *United States v. Cambio Exacto S.A.*, 166 F.3d 522, 526 (2d Cir. 1999), in which a litigant has a "sufficient stake  . . . to obtain judicial resolution of that controversy."  *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972).  To demonstrate standing under Article III, therefore, a litigant must allege a "distinct and palpable injury to himself," *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1157 (2d Cir. 1994) (quoting *Warth*, 422 U.S. at 501), that is the direct result of the "putatively illegal conduct of the [adverse party]," *id*. (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)), and "likely to be redressed by the requested relief," *id*. (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976)).  While ownership and possession, which are "reliable indicators of injury that occurs when property is seized", will normally demonstrate an individual's standing to challenge the seizure of property in a forfeiture action, *Cambio Exacto*, 166 F.3d at 527, "the injury to the party seeking standing . . . remains the ultimate focus."  *Id*.

### Louis V. Ciardullo, Sr.

6

The government claims that Mr. Ciardullo's petition fails to allege standing because he claims to be a general creditor to Phoenician Automotive, and therefore lacks a particular interest in the Mercedes.  Mr. Ciardullo does not claim to be a "bona fide purchaser for value", thus he does not have standing unless he alleges that he has an interest in the Mercedes that is superior to Southland's because it arose prior to Southland's commission of the acts that gave rise to the forfeiture.  *Id*.  In the petition, Mr. Ciardullo asserts he can "provide a direct link to the vehicle" because it is titled in the name of Phoenician Automotive, one of the entities that defaulted on bonds he purchased from Phoenician Automotive.

In *United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997), the Second Circuit held that a general creditor with an interest in property ordered forfeited, but no identifiable legal interest in the asset seized, lacks standing to contest an order of forfeiture.  "[A]n interest in property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account."  *Id*. at 836 (internal quotation marks omitted).  If, as Mr. Ciardullo alleges in the petition, the Mercedes is traceable to the funds with which he purchased bonds from Phoenician Automotive, he may have standing to contest the forfeiture of the Mercedes.  *See e.g. United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992) ("The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets.").  It may well be as the government contends that Mr. Ciardullo is a general creditor whose investment in Phoenician Automotive is not traceable to the Mercedes and that Mr. Ciardullo therefore lacks standing, *see United States v. Ribadeneira*, 920 F.Supp. 553, 555 (S.D.N.Y. 1996) ("Like bank depositors, petitioners are general creditors who have no interest in the specific accounts to which

7

their deposits might be traced, only in the defendant's estate as a whole - - and therefore can have

no interest in particular assets forfeited, . . . unless they have already secured a judgment against

the debtor and perfected a lien against a particular item."). Since, however, Mr. Ciardullo has

alleged that the Mercedes is "the only asset that can be linked to the investment made by

Petitioner", the *pro se* petition, viewed liberally, adequately alleges injury sufficient to show

standing at the pleading stage. Accordingly, the government's motion to dismiss Mr. Ciardullo's

petition is denied.

### Jane Short and Harold Short

Construing the petitions liberally, as the Court must in view of the status of the *pro se*

petitioners, the Court finds that Ms. Short has adequately alleged standing. The assertions in the

petition, if proved, would establish that Phoenician Automotive, owned by Ms. Short, purchased

the Mercedes in April 2004. According to the petition, Mr. Short and Southland used funds

provided by Phoenician Automotive to purchase the vehicle. Although Ms. Short avers that the

vehicle is, at present, registered in Harold Short's name, she states that she and Mr. Short paid the

insurance on the vehicle (before it was dropped), and refers to the vehicle as "ours." Thus, the

petition adequately alleges that Ms. Short has an interest superior to Southland's and which arose

prior to the criminal activity.

According to Mr. Short's petition, Mr. Short acquired title to the vehicle in July 2004,

following Southland's indictment. Even assuming Mr. Short acquired title to the Mercedes with

knowledge of the indictment and the forfeiture allegations against the Mercedes, if, as the petition

indicates, Ms. Short or Phoenician Automotive owned the vehicle, and Sean Southland did not

have "any interest in this vehicle", Jane Short Petition, Dkt. No. 34 and Harold Short Petition,

8

Dkt. No. 35, Mr. Short may be able to establish he reasonably believed the Mercedes was not subject to forfeiture, and that he was therefore a bona fide purchaser for value. *See* 21 U.S.C. § 853(n)(6)(B). Accordingly, petitioners have adequately alleged injury sufficient to establish standing to proceed in this matter.

### Summary Judgment – Rule 32.2(c)(1)(B)

Rule 32.2(c)(1)(B) states:

> After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.

Although the government seeks dismissal of Ms. Short's petition and Mr. Short's petition pursuant to Rule 32.2(c)(1)(B), based on written statements and records submitted in this case and in connection with the instant motion, there is no indication that discovery has ended. Further, there is no indication that the government has served the *pro se* litigants in this case with "The Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" as required by Local Rule 56.2.[2] Accordingly, the motion pursuant to Rule 32.2(c)(1)(B) is denied without prejudice to renewal.

### CONCLUSION

For the foregoing reasons, it is hereby

---

[2] The Advisory Committee Note to Rule 32.2, states:

> Because an ancillary hearing is connected to a criminal case, it would not be appropriate to make the Civil Rules applicable in all respects. The amendment, however, describes several fundamental areas in which procedures analogous to those in the Civil Rules may be followed. These include the filing of a motion to dismiss a claim, conducting discovery, disposing of a claim on a motion for summary judgment, and appealing a final disposition of a claim.

Fed. R. Crim. P. 32.2, Advisory Committee Note to Subdivision (c).

ORDERED that the United States' motion to dismiss the petitions is DENIED; and it is further

ORDERED that the United States' motion for summary judgment pursuant to Fed. R. Crim. P. 32.2(c)(1)(B) is DENIED without prejudice to renewal.

IT IS SO ORDERED.

DATE:  April 18, 2006

Norman A. Mordue
Chief United States District Court Judge